1241 from the Western District of Arkansas, United States v. Charlie Foster.  Thank you, Your Honor. May it please the court, I'm Aaron Holt and I represent the appellant in this case, Mr. Charlie Foster. Mr. Foster was pulled over by Officer Johnson in Springdale, Arkansas for having a cracked windshield. That's the only reason given why he was pulled over and the only evidence in the record concerning the nature of the crack is some photos that were submitted in connection with Mr. Foster's motion to suppress. The district court relied on those photos and nothing else. There was no hearing held, there was no testimony, there are no competing photos submitted by the government. Did you ask for an evidentiary hearing, Mr. Holt? Your Honor, I believe that I believe in the motion to suppress one was requested, but I think the court just determined that it wasn't wasn't necessary and what the district court, we have a photos that the the nature of the crack, the size of the crack was as described in the motion to suppress, which is to say that it was toward the bottom of the windshield, toward the dashboard, it didn't obstruct the driver's view of the road or other vehicles, and it didn't run all the way across the windshield. It was on the driver's side, kind of low toward the dashboard. The issue here, well there's a couple of issues. The first issue is whether the windshield was a safety defect under Arkansas law. Arkansas law is based on a statute that that's discussed extensively in the briefing. Arkansas code annotated section 2732 101, and then there's one Arkansas Supreme Court court case, Villanueva, that interpreted that. According to the actual words used by the Supreme Court, a windshield with a crack running from roof post to roof post across the driver's field of vision is the type of safety defect contemplated by the statute. You know, the interesting thing about that is I read the cases that Arkansas Supreme Court is saying that's sufficient to establish a violation of the statute, and it is of that type, but they didn't really go on and say, say what's the minimally sufficient case, and to me that's interesting. Is there any lower court cases that you're aware of where they've kind of defined what kind of a crack in a windshield is bad enough? Your Honor, I've looked for as many windshield cases as I could find, and I could not find any other Arkansas lower court cases that talked about that. The best that I could do was I found other jurisdictions cases. We've cited two cases from Florida, Ohio, New Mexico, and Oregon that all have a similar statutory scheme. Some states have something that actually talks about the condition of the windshield. Others rely on just a general safety statute, and these are other jurisdictions that are like Arkansas that rely on a general safety statute. So when you look at the actual wording of the statute, it's clear that what is required to constitute a violation is it has to render the vehicle unsafe, and when you talk about the equipment on the vehicle being in good working order and adjustment, as required for the vehicle safe operation. So that's really the question is, is this enough to to be unsafe? You know, and if you think about that, there's structural unsoundness that occurs with any type of a crack in a windshield, and if we had had a hearing, and if somebody put on an expert who says that a crack of this length renders this structurally unsound, and it is an inherent danger in the operation motor vehicle, you'd have a different case. And that's part of my problem as I analyze this thing. I keep looking at it. There doesn't seem to be any real response that was put in by the United States that put in like an affidavit or a statement that will make it look like a hearing. It's just all we, is it really, I mean, looks to me like it's really true that all we have are some photographs, and that there's no other record. And so if we avoid conjecture, we're really bound with a universe that exists of just, or consists of just the photographs, and I assume that is your position. Yes, your honor, it is. I don't think that Mr. Foster can be held accountable for not having a hearing or not having additional evidence. Basically, we did the best that we could, and from what we could pull from discovery in submitting those photos that we did, and as you can see, I mean, you can see those are attached in the record to the motion to suppress. They show, they appear to show, they show a crack that's very hard to see in some photos. But they're also just your statements, because they're attached to the moving documents. They're not set forth in an affidavit. They're not put forth in a, I mean, they're just exhibits, and exhibits attached to a moving document. I guess under my analysis of the rules of evidence, they're not evidence till somebody admits them, and the foundation is laid that they can be admitted, right? I mean, so, I mean, in some ways I look at what Judge Brooks did here, and I'm saying, well, he made a decision with zero evidence. I think that's a fair, I think that's a fair assessment, Judge, and I, you know, I think that ultimately what the, what the, what the district court's decision boils down to is a ruling that if there is an observable crack in a windshield, then, then an officer is objectively reasonable in pulling over the vehicle. I think that's really what you have to, that's what we're kind of left with, is, is that's, that's what it boils down to. And, and I just, I don't think that's, I don't think that's consistent with the law. If you look at the other cases that I mentioned, for example, the Hilton case, the Supreme Court of Florida specifically said that it's, it's a mistake of law to, to warrant pulling a vehicle over. And another point that I'd like to make is just that, that we believe that this is, this is a different, because of this statute and because of the way the statute is structured and the scheme of it, this is not, while having a damaged vehicle or, you know, equipment that's not, that's unsafe, that can be a violation. The entire purpose of this statute is, and it says it in subsection D of the statute, is to make the vehicle operator aware of any vehicle safety defects and to provide them a reasonable opportunity to make repairs without requiring the issuance of a citation, which may result in the levying of fines and court costs. This is kind of a public safety community caretaking function that allows for this to happen. And, um, Counsel, this is, this is Judge Smith. Help me with the facts. As I understand it, the officer saw what he perceived to be a safety violation, pulled the car over. Um, and did the conversation with the driver begin before there was an inspection? Uh, is, is, is that, uh, uh, what occurred or did the officer actually make an inspection and then begin the conversation? Your Honor, my understanding is that the, the, the officer simply walked up and may have, may have looked at the, at the windshield, but, but basically just began the conversation. I pulled you over because you got this cracked windshield. Uh, I believe that's, that's what happened. I don't think there was a separate inspection that happened. Would that be improper? Uh, well, I, Your Honor, I believe it's proper to, to approach the driver and to, to tell him what, what the purpose of the stop is. But I think then what should proceed from that is at that point, why would it be, um, impermissible for the with identities? Well, I, that, well, I think that would be appropriate to ask for, for a name, but he asked for identification. Uh, he asked for license, registration, insurance, and our contention is that that's, that's a separate investigation. That's a separate investigation that you would make for a, for a violation in connection with a violation. We think there's a distinction to be drawn between this kind of stop, which is for a public safety, you know, public safety purpose. It's not an invest. It's not necessarily an investigation of suspected criminal activity. This is supposed to be for a safety inspection. And all that's necessary is to say, pulled you over for this cracked windshield. We think that he should, the officer should have been able to see the condition of the windshield, say, well, it's, you know, it's not that bad as, as we can see from, from the photos that have been submitted. Uh, even though it's observable, it doesn't render it unsafe. Therefore, I'm going to do what I need to do, which is to tell you, you have a cracked windshield. You need to get that fixed and then let him be on his way. What if the cracked windshield had been more significant? And does your, does your argument as to the propriety of the officer's questions regarding identification and registration, does it rely on whether or not there was a sufficiently cracked windshield to that rose to the level of an equipment violation? If you understand my question, I think I do your honor. And I think I would say that it does depend to some extent on that. Uh, I think I would, I think I would have to concede that because it, again, if it's, if it's not sufficient and we don't think it was sufficient to be a violation, then at most he should just warn him of it and let him be on his way. If he was going to issue a citation for it, then, then he would have made the assessment that it was sufficient to rise to that level. And then he would be, then I think I would have to concede he would be justified in asking for license registration if he, if he found that a violation had occurred. So, and unless there are any other questions, I'd like to reserve the remainder of my time. Thank you, Mr. Hall. Mr. Harris. Thank you. May it please the court. My name is David Harris. I represent the United States. Uh, first of all, Foster has raised this issue of why the district court did not have a hearing and the district court accepted all the and still said, no, that doesn't pass muster. So I want to focus very briefly. There really are no facts in this record, right? I mean, you have the statements of council and whatever that is, it's not evidence. And then you don't have an affidavit from them. You guys don't put in an affidavit. I mean, we're sitting in a world that is generally fact free, except for three photographs, right? Your honor, what the district court found was, yeah, I go, I know what they found. What my question is, what did they rely on finding that? And they relied on the briefs of council. And my question for you is, is it the practice in Arkansas not to put in affidavits in opposition to motions, you know, to suppress evidence? I mean, is that your practice? Because I mean, listen, I've worked in a lot of trial courts over the last 25 years. I never saw a record that looked like this. Your honor, I think to answer your question, uh, to submit affidavits with responses, no, typically there is a hearing. In this case, the court read, uh, both motions and determined based on those facts, giving all due deference to foster. Still, you lose. And those facts are, as the district court found and accepted from Foster's motion when Officer Johnson made contact with him for having an unsafe windshield, several cracks. And he says immediately upon making contact, you got this crack windshield. Officer Johnson noted that Foster was extremely nervous. His hands were shaking uncontrollably. He had a passenger in the vehicle. She couldn't answer what her date of birth was. She is there, but that's all in a brief, right? I mean, that's I mean, I just am really troubled with the idea that there really is no factual record for here for us to actually review. We are. The district court is not required to have a hearing, but they are required to make decisions based on evidence. They made the decision based on everything that Foster said, giving him credit. So after after the officer Foster claims it's unreasonable for the officer to make contact and adjudicate the merits of the underlying violation right on the spot and say, Okay, sir, see you later. Have a nice day without checking his driver's license without running, uh, check for outstanding warrants, which are routine tasks, which this court has repeatedly held or or reasonable. The statute here we're talking about is not like the statute in Washington that he cites where the Nebraska did not have a statute of plot. It is. This statute is very broad. 27 32 101. Having reasonably that officer may have safety defects shall have caused to stop the vehicle. So don't we have to hear from the officer on that? Yeah, I would submit that we did in the form of Foster's motion. Those facts were accepted as truth. But those his life, I'm sorry. And those facts were accepted in turn in terms of the way Foster presented them. Not the way the government present the way Foster did in the district court said. Nonetheless, but I guess I guess my question is, don't we? Don't we have to know what the officer did and saw and at the time? I think we do. I think I would agree with with the facts as presented in the briefs in the motion and briefs. I think the facts were fairly straightforward. I mean, what Foster's trying to say is, Look, I agree. I had a crack in the that it was in building away. Well, they'll do away. This is not the law. Doesn't say that has to run from roof post to roof post. And we're going back and we're using hindsight to litigate the underlying violation. And that's not the district court's job. The district court shop was determined if there's sufficient public calls to initiate this traffic stop. And then once that stop is made, is it okay for the officer to extend the traffic stop by running the driver's license and checking for any outstanding warrants, registration, things of that nature? That that's certainly reasonable. Uh, under the circumstances, Foster tries to distinguish the crack in his windshield and the crack of Davis. Um, unpublished opinion from this court and and don't labor. But the validity of Foster's windshield actually violated the statute. The validity determined is based on whether or not his actions or objectively reasonable. So again, this court is held that the officer may conduct routine tasks when a traffic stop is initiated. And in the United States versus Rodriguez, the Supreme Court said in this case was cited beyond determining whether to issue a ticket. An officer's mission during a traffic stop typically includes checking driver's license, determining whether there are outstanding warrants against the driver and inspecting the automobile's registration and proof of insurance. These checks are the same objective as enforcement of the traffic code, ensuring that vehicles on the road are operating safely and responsibly. As soon as as soon as the officer under Foster's argument, the officer should not have even run his driver's license, should have let him go. And that's just not the law. That is just not law. I understand the court's concern about not having a hearing. Uh, that was not my decision. Obviously, that's the court decision. We're always prepared for a hearing. We're always But after I read the order, I would ask the court to go back and look at the district court order. It's document 23. It's pretty clear that the court did not need to have a hearing based on the facts as presented and accepted by both parties. And unless the court has any additional questions, I would yield the balance. Counsel, what was was a hearing requested and denied? Or was it just specifically requested? I believe in Foster's motion, uh, he said something about a hearing, but it was not specifically requested. And so I hope that answers the court's question. Would you think it improper to have a remand for a hearing? I don't think it would be improper. Um, but I do. I do think if this court goes back and looks at the case law carefully, and I really think it's laid out quite precisely in Judge Brooks's order. Um, once I read that order, it was very clear to me that the court did not need to have a hearing because once again, the court accepted the facts as as foster presented. And, of course, we would have presented different facts. But, uh, I hope that answers the court's question. Thank you, Mr. Harris. Mr. Holt. Your Honor, I'll try and make just a couple of points. First, I'll answer your question. Uh, we did request in the alternative a hearing in the motion to suppress. We requested the motion to suppress be granted or for a hearing on the matter. I'm looking at the motion to suppress. And then I would also, again, just point out that the difference, the court relied on that. You can you can ask. You can do those things. You can ask for license registration, etcetera. Again, Claiborne was was was a case involving the I'm sorry. May I finish? I see my time's expired. May I finish this? Yes, you can. Complete your thought. Thank you, Your Honor. Uh, Claiborne was was for somebody who wasn't displaying license plates. It was clear there was a violation again. We're pointing out the difference here between this type of case where again we say there was no violation. It wasn't severe enough to be a violation. Again, it's under a different statutory scheme that that allows for stops for different purposes than than for issuing citations for violations. The purpose of the stop was not to issue a citation or shouldn't have been. If you saw a cracked windshield, it should have been to give a warning that you needed to get your windshield fixed. And that's so I think that that distinguishes those cases. And that was there. I assume in the hearing, was there any discussion of mistake on the part of the officer and the effect of a mistake and whether or not the officer could was entitled to to inquire of the driver and passenger. Well, well, as as there was, there was no hearing, so we didn't. We didn't really get into that. But the court did address in its in its order, you know, whether it was essentially the court assumed that it was a mistake. That was the position we took is that the court essentially assumed that it was a mistake and then decided that even if it was a mistake, it was objectively reasonable for the officer to to make the stop. That was as far as the as the decision went. I would like to follow up on something that Mr. Harris argued forcefully and with some level of persuasion. And that is that no matter what fact universe we work in, you're not going to come up with any facts different than what you've already put in your brief. And there really is no reason for us to go ahead with sending this back for to remand it for a hearing because the fact universe gets no better for you than what you've already got in your brief. And that that if we assume all that's true, we are left with the universe where, as we follow the make the legal decisions, we're going to get to a conclusion that that what was done here was proper. Now, set aside the last part of that comment. But what about the first part? Is there any real basis or need for any hearing in this matter? Your Honor, I think I think I would agree with Mr. Harris's assessment that essentially what the court did was assume the facts that we stated to be true. And so I I think that it makes sense to just treat those facts as if as if the court had had a hearing in those facts have been proven. Okay. Thank you, Chief for indulging. No problem. Thank you, Counsel for providing argument to the court this morning on the materials that have been submitted to us. Your arguments been helpful. We'll do our best with the issue before us. Counsel may be excused.